2004 WY 81

**Stephen BERRY, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 03–114.

Supreme Court of Wyoming.

July 8, 2004.

Representing Appellant: Ken Koski, State Public Defender, PDP; Donna D. Domonkos, Appellate Counsel; Diane Courselle, Director DAP; Kristen Cunningham, Intern DAP; K. Adam Christian, Jr., Intern DAP.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Daniel M. Fetsco, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1] Seven hundred and twenty days after his arrest, a jury convicted Stephen Berry on two counts of aggravated assault with a deadly weapon in violation of Wyo. Stat. Ann. § 6–2–502(a)(ii) (LexisNexis 2003) and found him to be a habitual criminal under Wyo. Stat. Ann. § 6–10–201(a)(b) (LexisNexis 2003). Based upon these convictions, the district court sentenced Mr. Berry to two consecutive terms of life imprisonment without the possibility of parole. We hold that Mr. Berry's constitutional right to a speedy trial was violated and reverse his conviction.

## ISSUES

[¶ 2] Mr. Berry presents the following issues:

I. Did the trial court err in denying Mr. Berry's motions to dismiss due to violations of his rights under the constitutions of the United States and the State of Wyoming and Rule 48 of the Wyoming Rules of Criminal Procedure?

II. Did the trial court's order denying Mr. Berry's motion to compel the alleged victims to provide DNA samples violate Mr. Berry's Sixth Amendment rights to due process, to present a defense, and to meaningfully confront witnesses against him?

III. Did the trial court deviate from the mandate of W.R.Cr.P. 11 and the interests of justice in refusing to accept Mr. Berry's guilty plea and depriving Mr. Berry of the chance to avoid the habitual offender enhanced sentence?

IV. Did the trial court err in refusing to allow Mr. Berry to present evidence in the habitual criminal trial demonstrating that one of his prior convictions was obtained in violation of his right to counsel; Did the trial court also err in prohibiting the jury from considering this issue?

[¶ 3] The State re-phrases the issues as follows:

I. Was appellant denied his right to a speedy trial?

II. Did the district court properly refuse to order the victims to provide DNA samples?

III. Did the district court properly refuse to accept appellant's plea of no contest?

IV. Did the district court deny appellant the opportunity to challenge the validity of his earlier felony conviction during the habitual criminal phase of his trial?

## FACTS

[¶ 4] The procedural history of this case is long and protracted, encompassing a period of nearly two years from the date Mr. Berry was arrested until he was brought to trial. Mr. Berry was charged on January 23, 2001, with two counts of aggravated assault and battery in violation of Wyo. Stat. Ann. § 6–2–502(a)(i) (LexisNexis 2003) for allegedly causing serious bodily injury to Phil McIntosh and Ross Plagens on December 22, 2000, either intentionally or knowingly and recklessly under circumstances manifesting extreme indifference to the value of human

life. The criminal affidavit of probable cause filed with the arrest warrant alleged that Mr. Berry drove his vehicle at a high rate of speed into the parking lot behind the Albany Bar in Cheyenne, Wyoming, nearly striking the victims' friend. One of the victims yelled at Mr. Berry that he nearly hit his friend at which point Mr. Berry approached and struck Mr. Plagens in the face. When Mr. McIntosh attempted to intervene, Mr. Berry struck him in the face. Mr. Berry then left the scene.

[¶ 5] Mr. Berry was arrested on January 23, 2001. His arraignment was set for February 16, 2001, but on that date his case was reassigned and his arraignment did not occur until March 8, 2001. Trial was scheduled for April 9, 2001. In the setting order, the district court indicated Mr. Berry's trial was one of several criminal trials scheduled the same day.

[¶ 6] On March 9, 2001, Mr. Berry sent a letter pro se to the clerk of court "in [regard] to filing a ... Demand for Speedy Trial" and other motions. Ten days later, Mr. Berry's attorney filed a demand for speedy trial. The April 9, 2001, trial date came and went without a trial and on May 9, 2001, the prosecution filed a motion for new trial setting. The district court re-scheduled the trial for July 9, 2001.

[¶ 7] Up to this point, counsel from the state public defender's office represented Mr. Berry. On June 7, 2001, a private attorney entered an appearance on his behalf and the public defender's office withdrew. Defense counsel and the prosecution negotiated a plea agreement, causing the district court to vacate the July 9, 2001, trial date, and schedule a change of plea hearing for July 13, 2001. At the hearing, however, the district court refused to accept Mr. Berry's plea[1] and re-scheduled the case for trial on September 17, 2001.

[¶ 8] On July 26, 2001, after the rejection of Mr. Berry's plea, the prosecutor filed an amended information alleging that Mr. Berry had three prior felony convictions, making him a habitual criminal under Wyo. Stat. Ann. § 6–10–201(a)(b)(ii) (LexisNexis 2003).

The district court scheduled a re-arraignment for August 24, 2001, to advise Mr. Berry concerning the habitual criminal statute.

[¶ 9] Meanwhile, the prosecution filed with this Court a motion for an order allowing the district court to extend the trial date beyond six months from the arraignment pursuant to W.R.Cr.P. 48(b)(5). In support of the motion, the prosecution asserted the delay was caused by Mr. Berry changing attorneys "and by the fact that [Mr. Berry] did not go through with the plea agreement that was reached between the State and his counsel." We entered an order granting the motion on August 20, 2001. On August 24, 2001, the date Mr. Berry was to be advised of the habitual criminal allegation, the district court entered an order allowing defense counsel to withdraw pursuant to a motion filed at Mr. Berry's request. The district court then re-appointed the public defender's office to represent Mr. Berry and rescheduled the re-arraignment for September 14, 2001.

[¶ 10] On September 17, 2001, the date the trial was to commence, new counsel entered an appearance on Mr. Berry's behalf. The trial did not go forward, and a few days later, the district court entered an order rescheduling trial for October 22, 2001. On September 28, 2001, defense counsel filed a motion to dismiss the charges for lack of a speedy trial. On October 1, 2001, the prosecution filed a motion requesting leave to file another amended information. This time, the prosecution sought to charge Mr. Berry with two counts of aggravated assault with a deadly weapon under § 6–2–502(a)(ii). Defense counsel filed an objection to the amendment along with several other motions, including another motion to dismiss on speedy trial grounds.

[¶ 11] On October 22, 2001, prior to the commencement of trial, the district court heard argument on and denied the speedy trial motion and the motion to amend the information. Upon the denial of its motion, the prosecution moved to dismiss the case

---

1. As more fully discussed below, the reason the district court gave for denying the plea was the lack of a factual basis because Mr. Berry claimed he was provoked.

with permission to re-file it alleging aggravated assault with a deadly weapon. The district court granted the motion and dismissed the case without prejudice the same day. The prosecution immediately filed an information alleging two counts of aggravated assault with a deadly weapon. Mr. Berry was held in jail until he could be served with an arrest warrant the following day.

[¶ 12] On October 31, 2001, the defense again moved for dismissal of the case based upon speedy trial violations. The district court denied the motion by order dated November 2, 2001. On November 6, 2001, the case was re-assigned and then set for arraignment on November 30, 2001. The district court set the case for trial on January 14, 2002.

[¶ 13] On December 10, 2001, defense counsel filed another motion to dismiss on the basis of speedy trial. That motion was followed in rapid succession by several other defense motions, all of which the district court set for hearing on January 10, 2002. After the motion hearing, on January 12, 2002, the district court received word that defense counsel had been hospitalized. The January 14, 2002, trial date came and went without a trial. A motion filed on January 28, 2002, stated that defense counsel was not able to try the case at that time because of continuing medical problems. The district court signed an order allowing defense counsel to withdraw from representation of Mr. Berry. A few days later, the district court rescheduled the trial for February 19, 2002. A motion hearing was held on February 8, 2002, at which time another attorney from the public defender's office appeared on Mr. Berry's behalf and requested a continuance of the trial date to allow him time to prepare for trial. The district court scheduled the trial for April 22, 2002.

[¶ 14] Meanwhile, on February 10, 2002, Mr. Berry filed a pro se motion in which he again asserted his right to a speedy trial. On April 12, 2002, defense counsel filed a motion to continue the April 22, 2002, trial date another 45 days on the grounds that he needed more time to prepare. The district court granted the motion. In August 2002, the district court entered an order setting the trial for September 23, 2002, five months after defense counsel's request for a 45-day continuance. Then, on September 13, 2002, the prosecution moved for a new trial setting and the court again continued the trial, this time until November 12, 2002. On November 25, 2002, the prosecution sought a continuance and the trial was re-scheduled for January 13, 2003.

[¶ 15] On January 3, 2003, Mr. Berry filed another pro se motion to dismiss the charges against him based upon speedy trial violations. No order ruling on the motion appears in the record. Mr. Berry's case went to trial on January 13, 2003, ten days short of two years from the date he was arrested.

[¶ 16] On January 15, 2003, after two days of trial, the jury returned a guilty verdict on both counts of aggravated assault with a deadly weapon. That afternoon, a trial was conducted before the same jury on the question of whether Mr. Berry was a habitual criminal. At the conclusion of that trial, the jury found Mr. Berry had been convicted of three or more prior felonies, making him a habitual criminal. The district court entered a judgment and sentence on April 15, 2003, ordering that Mr. Berry serve two consecutive life sentences without the possibility of parole in the Wyoming Department of Corrections.

## STANDARD OF REVIEW

[¶ 17] Of the four issues we are asked to consider, we find the speedy trial issue determinative. We find it unnecessary, therefore, to address the alleged error involving the denial of DNA samples and preclusion of evidence relating to prior offenses. We address the district court's rejection of the nolo contendere plea only to the extent that it bears on the speedy trial issue. We review speedy trial claims to ensure that the mandates of W.R.Cr.P. 48 and constitutional guarantees have been met. *Taylor v. State,* 2001 WY 13, ¶ 5, 17 P.3d 715, ¶ 5 (Wyo.2001). We examine de novo the constitutional question of whether a defendant has been denied a speedy trial in violation of the Sixth

Amendment. *Walters v. State*, 2004 WY 37 ¶ 9, 87 P.3d 793 (Wyo.2004).

## DISCUSSION

[¶ 18] Mr. Berry's argument that his speedy trial right was violated is threefold. First, he claims the delay between his March 8, 2001, arraignment and the State's dismissal and re-filing of new charges on October 22, 2001, violated W.R.Cr.P. 48. Second, he claims the delay between his second arraignment on November 30, 2001, and eventual trial commencing on January 13, 2003, violated Rule 48. Third, he claims the delay of 720 days from arrest until trial violated his constitutional right to a speedy trial.

[¶ 19] The State responds that no violation of Mr. Berry's right to speedy trial occurred under either Rule 48 or the constitution. Addressing Rule 48 and the March 8 to October 22, 2001, timeframe, the State argues any delay was required in the due administration of justice and Mr. Berry has shown no prejudice. As for Mr. Berry's Rule 48 claim for the period between October 22, 2001, and January 13, 2003, the State asserts the delay was attributable mostly to defense counsel. Addressing Mr. Berry's constitutional claim, the State concedes the nearly two-year delay from Mr. Berry's arrest until trial necessitates consideration of the four factor constitutional analysis. The State further concedes the delay was presumptively prejudicial but argues it was attributable largely to Mr. Berry and he has not made a sufficient showing that prejudice resulted from the delay to warrant reversal of his conviction.

[¶ 20] We find no violation of Mr. Berry's right to a speedy trial under Rule 48. However, we hold that his constitutional right to a speedy trial was violated.

## 1. W.R.Cr.P. 48

[¶ 21] For purposes of analyzing the claim under Rule 48, we begin by calculating the time between the defendant's arraignment and trial, excluding the time periods specified in the rule. *Taylor,* ¶ 5. Our Rule 48 review in this case is complicated somewhat by the fact that the State filed two

criminal proceedings against Mr. Berry—the proceeding initiated in January 2001 by the filing of the information alleging aggravated assault under § 6–2–502(a)(i), and the proceeding initiated in October 2001 after dismissal of the first proceeding and the filing of a new information alleging two counts of aggravated assault with a deadly weapon. Mr. Berry was arraigned on the first charges on March 8, 2001, and those charges were dismissed on the State's motion on October 22, 2001. Later the same day, the State filed the second information under a separate docket number, requiring the State to re-arrest Mr. Berry, conduct another preliminary hearing and, upon a finding of probable cause, hold another arraignment. Trial on those charges commenced on January 13, 2003.

[¶ 22] We have held that the speedy trial time period begins anew when charges are re-filed against a defendant. *Hall v. State*, 911 P.2d 1364, 1370 (Wyo.1996); *Alicea v. State*, 13 P.3d 693, 700 (Wyo.2000). In the latter case, Mr. Alicea was charged with ten counts of second-degree sexual assault. After the trial court denied its motion for use of W.R.E. 404(b) evidence, the State moved to dismiss the charges without prejudice. The trial court granted the motion. Several weeks later, the State re-filed the same charges and Mr. Alicea was tried and convicted on six counts. He claimed on appeal that his right to speedy trial was violated because 16 months passed between his initial arraignment and trial. For purposes of our Rule 48 analysis, we held the speedy trial time period commenced on the date of the second arraignment.

[¶ 23] Unlike the arguments presented in *Hall* and *Alicea*, Mr. Berry does not assert that the days between his first arraignment and eventual trial must be added together to find a Rule 48 violation. Rather, Mr. Berry asserts this Court must review his Rule 48 speedy trial claim in the context of two separate time frames: first, the period beginning March 8, 2001, and ending October 22, 2001; and second, the period beginning November 30, 2001, and ending January 13, 2003. Mr. Berry contends his right to speedy trial under Rule 48 was violated during both of these

time periods, in the first instance because more than 120 days[2] passed between arraignment and dismissal, and in the second instance because more than 180 days under the amended Rule 48 passed between arraignment and trial.

■ [¶ 24] The difficulty with consideration of the first time frame at this juncture is that Rule 48 expressly provides that the prosecution in a criminal case may dismiss charges with leave of court and "the prosecution shall thereupon terminate." Under this provision, the prosecution was entitled to seek leave of the court to dismiss the case against Mr. Berry. Upon entry of the order of dismissal, the case terminated. The order of dismissal was the final order from which an appeal of alleged error in the proceedings could have been taken. Mr. Berry did not appeal the October 22, 2001, order dismissing the charges filed against him. Lacking a timely notice of appeal from that final order, we will not consider Mr. Berry's claim that his right to speedy trial under Rule 48 was violated during the first proceeding.

■ [¶ 25] We turn to the question of whether a violation of Rule 48 occurred between arraignment and trial in the second proceeding. As noted, Mr. Berry was arraigned on the charges of aggravated assault with a deadly weapon on November 30, 2001, after the effective date of the amendment to Rule 48 providing that criminal charges must be brought within 180 days of the arraignment and continuances beyond 180 days from arraignment may be granted in accordance with subsection (b)(4). We held in *Vlahos v. State*, 2003 WY 103, ¶ 12, 75 P.3d 628, ¶ 12 (Wyo.2003), that the version of the rule in effect on the date of arraignment applies to a speedy trial demand. Thus, the 180 day time period applies to our analysis of whether a speedy trial violation occurred between the second arraignment on November 30, 2001, and trial on January 13, 2003.

[¶ 26] The district court originally scheduled Mr. Berry for trial on January 14, 2002, forty-three days after arraignment and well within the 180 days authorized by the Rule in effect at the time. Two days before trial, on January 12, 2002, the district court received

2. W.R.Cr.P. 48 was amended effective September 1, 2001. Prior to that date, the rule provided in relevant part:

*(b) Speedy trial.—*

(1) It is the responsibility of the court, counsel and the defendant to insure that the defendant is timely tried.

(2) A criminal charge shall be brought to trial within 120 days following arraignment unless continued as provided in this rule.

(3) The following periods shall be excluded in computing the time for trial:

(A) All proceedings related to the mental illness or deficiency of the defendant;

(B) Proceedings on another charge;

(C) Delay granted by the court pursuant to paragraph (4) or (5);

(D) The time between the dismissal and the refiling of the same charge; and

(E) Delay occasioned by defendant's change of counsel or application therefore.

(4) Continuances not to exceed *six months* from the date of arraignment may be granted by the trial court as follows:

(A) On motion of defendant supported by affidavit; or

(B) On motion of the attorney for the state or the court if:

(i) The defendant expressly consents;

(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or

(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced; and

(C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.

(5) Any request to continue a trial to a date more than *six months* from the date of arraignment must be directed to the court to which appeals from the trial would be taken and may be granted by that court in accordance with paragraph (4).

(6) Any criminal case not tried or continued as provided in this rule shall be dismissed *120 days* after arraignment.

. . .

(8) A dismissal for lack of a speedy trial under this rule shall not bar the state from again prosecuting the defendant for the same offense unless the defendant made a written demand for a speedy trial or can demonstrate prejudice from the delay.

The new version of the rule, effective September 1, 2001, provided that criminal charges must be brought within *180 days* of the arraignment and continuances beyond *180 days* from arraignment may be granted in accordance with subsection(b)(4). The 2001 amendment also deleted subsection (5) of the rule, which allowed continuances exceeding six months from the date of arraignment to be granted by this Court.

notification of lead defense counsel's hospitalization. The court continued the trial to February 19, 2002, 81 days after the arraignment.

[¶ 27] On January 28, 2002, lead defense counsel withdrew from the case because of continuing health problems. On February 8, 2002, the public defender appointed to represent Mr. Berry after prior counsel withdrew requested a continuance in order to have adequate time to prepare for trial. The district court granted the request and re-scheduled the case for trial on April 22, 2002, 143 days from the arraignment and still within the time provided by Rule 48.

[¶ 28] Ten days before trial, on April 12, 2002, defense counsel requested another continuance of 45 days. A hearing was held on the motion, at which time Mr. Berry stated that he preferred to go ahead with the trial but, after talking with counsel, agreed to the continuance. The district court weighed the competing concerns, including the speedy trial issue, and granted the motion. The district court specifically advised the parties that it was concerned about scheduling and did not know when the next trial setting would be. The court also stated: "I have to rely on you, [defense counsel] to keep the court advised of the progress of the things you're trying to do so that we can give, first, the Court and [prosecution] plenty of advanced notice of resetting." Defense counsel indicated a trial date ten weeks from then would be appropriate. The prosecution advised the district court that a June trial date would be beyond the 180 days. The district court requested counsel to confer on language allowing a trial beyond the 180 days. On April 30, 2002, the district court entered an order continuing the trial date pursuant to Rule 48(b)(4)(A). The next document appearing in the record is an order dated August 26, 2002, setting the trial for September 23, 2002, five months later and 253 days after the arraignment.

[¶ 29] From the record before us, we conclude the continuance from April 22, 2002, to September 23, 2002, was granted on motion of the defendant in accordance with Rule 48(b)(4)(A). Moreover, it was granted with: Mr. Berry's express consent, the par-

ties' knowledge that the 180 days were about up and the next available trial date was uncertain, and an express directive to defense counsel to keep the court apprised as to his readiness for trial. There is no indication from the record that defense counsel advised the district court he was ready for trial before the September 23, 2002, setting. Under these circumstances, we exclude from the speedy trial period the delay from January 12, 2002, the date defense counsel was hospitalized, until September 23, 2002. Excluding those days from the calculation, only 43 days passed between arraignment and the September 23, 2002, trial date and no Rule 48 speedy trial violation had occurred as of that date.

[¶ 30] On September 13, 2002, the prosecution filed a motion for new trial setting, stating that he was scheduled to be in trial on another matter on that date. The district court granted the motion and set Mr. Berry's case for trial on November 12, 2002, 60 days later. Adding the 60 days to the 43 days carried over from the previous calculation, there was no violation of the rule. The trial did not go forward on November 12, 2002, either, apparently because of a "scheduling conflict", causing the "parties [to] agree to a continuance." On November 25, 2002, the prosecution filed another motion for new trial setting and the district court set the trial for January 13, 2003. Adding the additional 61 days between November 12, 2002, and January 13, 2003, to the 103 days carried over results in 164 days between arraignment and trial. We hold there was no violation of Mr. Berry's right to a speedy trial under W.R.Cr.P. 48 between the time the state re-filed the charges and trial. We turn to the question ·of whether his constitutional right to a speedy trial was violated by the cumulative delay incurred in the two proceedings.

### 2. Constitutional Right to Speedy Trial

[¶ 31] In evaluating a constitutional speedy trial claim, we adhere to the test enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Cosco v. State*, 503 P.2d 1403 (Wyo.1972). Under that test, we consider four factors in determining whether a speedy trial violation

has occurred: 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. *Harvey v. State*, 774 P.2d 87, 92 (Wyo.1989), citing *Barker*. These factors must be considered together and balanced in relation to all relevant circumstances. *Id.* The burden of proving prejudicial delay from a speedy trial violation lies with the defendant. *Rodiack v. State*, 2002 WY 137, ¶ 11, 55 P.3d 1, ¶ 11 (Wyo.2002). However, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial. *Harvey*, 774 P.2d at 92, quoting *Dickey v. Florida*, 398 U.S. 30, 37–38, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). It is axiomatic that a defendant has no duty to bring himself to trial. *Harvey*, 774 P.2d at 96. Thus, the burden is on the State to prove that delays in bringing a defendant to trial are reasonable and necessary. *Id.* at 95. The ultimate question is "whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial." *Warner v. State*, 2001 WY 67, ¶ 10, 28 P.3d 21, ¶ 10 (Wyo.2001) (citations omitted).

### a. Length of delay

▮▮▮▮ [¶ 32] No precise length of delay automatically constitutes a violation of the right to a speedy trial. *Harvey*, 774 P.2d at 92. However, when the delay is so protracted as to be presumptively prejudicial, inquiry into the other factors is required. *Id.* Under constitutional analysis, the relevant period is from arrest to trial. *Taylor*, ¶ 5. The question we must answer initially in Mr. Berry's case is, which arrest? The initial arrest on January 23, 2001? Or the subsequent arrest on October 22, 2001? In answering this question we are guided by the following principles applicable generally to constitutional speedy trial analysis:

> Once the defendant's speedy trial right has attached, it "continues until the defendant is convicted, acquitted or a formal entry is made on the record of his case that he is no longer under indictment." *This is commonly taken to mean that in the event of reindictment the date of the original arrest or charge is still controlling, but that the* time between the dismissal and recharging are not counted, provided of course that the defendant is not held in custody in the interim awaiting the new charge. *But if the original charge was dismissed on motion of the defendant, some courts simply begin counting again as of the date of recharging. Again assuming that the focus is upon the charge rather than the arrest, problems can arise where after the initial charge some other charge is filed against the same defendant. It is difficult to generalize about this situation, except to say that* the date of the first charge is more likely to be deemed controlling if the second charge by the same sovereign is a refinement of the first *rather than a charge of different crimes arising out of the same incident. In any event,* continuous custody of the defendant between the two charges when there is some relationship between them **makes it more likely the earlier date will be deemed controlling.**

LaFave, Israel and King, 4 *Criminal Procedure* § 18.1(c), pp. 670–71 (emphasis added).

[¶ 33] We recognized in *Caton v. State*, 709 P.2d 1260 (Wyo.1985), when one charge is dismissed and supplanted by another, the speedy trial calculation is not affected. Citing *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 1500, 1502–1503 & n. 12, 71 L.Ed.2d 696 (1982), we stated that the periods of formal charge by a single sovereign for the same criminal act are tacked together even if the charges are different. *Caton*, 709 P.2d at 1265. On the basis of these principles, the important date for our analysis is the date of Mr. Berry's initial arrest—January 23, 2001. Although the charges leading to that arrest were subsequently dismissed on motion of the prosecution, Mr. Berry was held in jail until he was re-arrested on different charges arising out of the same incident that led to the initial charges. The new information alleged the same offense, i.e., aggravated assault, but refined the charge to allege assault "with a deadly weapon" rather than assault "under circumstances manifesting extreme indifference to the value of hu-

man life." [3] In light of the fact that Mr. Berry was held in custody continuously from his initial arrest through the eventual trial, we hold that the constitutional speedy trial time period commenced on January 23, 2001, the date he was first arrested on aggravated assault charges arising out of the December 2000 incident, and ended on January 13, 2003, the date he was finally tried, a period of 720 days.

[¶ 34] In *Harvey,* we held a delay of 562 days between the defendant's arrest and trial was presumptively prejudicial and must be weighed heavily in favor of the defendant in the balancing test analysis. *Harvey,* 774 P.2d at 94. In *Osborne v. State,* 806 P.2d 272 (Wyo.1991), we said that a delay of 244 days was not presumptively prejudicial but was significant enough to warrant further analysis. Given this precedent, the delay of 720 days in Mr. Berry's case is presumptively prejudicial and further analysis is required. Additionally, where the State concedes the delay is presumptively prejudicial, as it does here, examination of the other three factors is appropriate. *Warner,* ¶ 12.

### b. *Reason for Delay*

[¶ 35] Unquestionably, delays attributable to the defendant may disentitle him to speedy trial safeguards. *Harvey,* 774 P.2d at 94. In this case, some of the time during which Mr. Berry was incarcerated was attributable to the defense. In the first proceeding, Mr. Berry obtained new counsel who did not enter an appearance until the date the case was scheduled for trial, necessitating a continuance of the trial. During the second proceeding, lead defense counsel was hospitalized, resulting in Mr. Berry having to obtain other representation. Mr. Berry's new attorney requested additional time to prepare for trial. Although these events may have been beyond Mr. Berry's control,

they weigh against him in the analysis. Together, these time periods amount to 287 days during which the trial was delayed because of the defense.[4]

[¶ 36] We have invoked the following guidelines in determining the weight to be given to delay attributable to the prosecution:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witnesses, should serve to justify appropriate delay.

*Wehr v. State,* 841 P.2d 104, 112–113 (Wyo. 1992), quoting *Barker.* A thorough review of the record reveals that significant periods of the delay in getting Mr. Berry to trial were attributable to the State. On two occasions over the course of the nearly two-year period that Mr. Berry was in jail awaiting trial, proceedings were delayed by re-assignment of the case. The reason for the re-assignments is not apparent from the record but there is no indication they were requested by Mr. Berry. More delay occurred between April 9, 2001, and July 9, 2001, as a result of the court's crowded docket. Further delay was caused by the State's "eleventh-hour" decision, announced on the day trial was scheduled to begin, to amend the information to allege use of a deadly weapon, a decision that could have been made weeks, if not months, before trial was scheduled to begin.[5] As we noted in *Caton,* "The prosecutor, not the supreme court and not the district court, must decide how to charge a defendant. If he later changes the charge because he

---

3. Aggravated assault and battery, whether "under circumstances manifesting extreme indifference to the value of human life," § 6–2–502(a)(i), or "with a deadly weapon," § 6–2–502(a)(ii), is a felony punishable by imprisonment for not more than ten (10) years. § 6–2–502(b).

4. As more fully discussed below, in the final analysis this time is deducted from Mr. Berry's

side of the equation because it occurred after the district court rejected his plea.

5. During the October 22, 2002, motion hearing, the prosecutor represented to the court that he only just learned of the weapon when he took over and began investigating the case in August 2002. In fact, he mentioned a weapon at the July 13, 2001, change of plea hearing.

changes his mind, then any delay that results is unnecessary." *Caton*, 709 P.2d at 1265. Two more delays were the result of prosecution requests for continuances, requests that were made after Mr. Berry had already been incarcerated for 20 months and 22 months respectively and at a time when his trial properly should have taken priority over other matters.

[20] [¶ 37] Besides these delays, the district court's refusal to accept Mr. Berry's plea of nolo contendere profoundly impacted his right to speedy trial. As a result of this decision, Mr. Berry: (1) remained incarcerated for another 17 1/2 months while awaiting trial; (2) faced an additional charge and more severe penalty under the habitual criminal statute; (3) was charged with 2 counts of aggravated assault with a deadly weapon under § 6–2–502(a)(ii) rather than aggravated assault under § 6–2–502(a)(i); and (4) was tried, convicted and sentenced to two consecutive terms of life imprisonment without parole. In light of the delay that resulted from the rejection of the nolo plea, we must digress from our speedy trial discussion, and address the propriety of the district court's action in that regard.

¶ 38] Rule 11 of W.R.Cr.P. allows a defendant to enter a plea of not guilty, not guilty by reason of mental illness or deficiency, guilty, or nolo contendere.[6] The rule further provides:

(a) ...

  (1) ...

    (A) Nolo contendere.—A defendant may plead nolo contendere only with the consent of the court. Such a plea shall be accepted by the court only after due consideration of the views of the parties and the interest of the public in the effective administration of justice.

  . . .

(d) *Insuring that the plea is voluntary.*— The court shall not accept a plea of guilty

or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

. . .

(f) *Determining accuracy of plea.*—Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such a plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

[22] [¶ 39] Construing this language, we have said:

"Nolo contendere" means literally "I do not wish to contest." It has the same effect as a plea of guilty for the purposes of the case, but it cannot be used as an admission in a civil case for the same act. It is an implied admission of every essential element of the offense for the purposes of the case. As such, it is in the nature of a compromise between the prosecution and the accused for the purpose of disposing of the case. The court may accept it without first satisfying itself that the defendant committed the crime charged as it must do on a plea of guilty. Issues of fact do not remain, and, if accepted by the court, the court must enter judgment on the plea.

*State v. Steele*, 620 P.2d 1026, 1028 (Wyo. 1980) (citations omitted). We have acknowledged that an innocent defendant may not wish to contest charges filed against him and a nolo contendere plea provides a means for him to do so. *Peitsmeyer v. State*, 2001 WY 38, ¶ 6, 21 P.3d 733, ¶ 6 (Wyo.2001). Accordingly, W.R.Cr.P. 11(f), requiring the court to determine the accuracy of a plea, applies to

---

6. Both parties cite *North Carolina v. Alford*, 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) in addressing the rejection of the nolo plea. We find *Alford* applicable only to the extent that it allows a defendant who is not willing to concede guilt to enter a plea in order to limit the potential sentence. Technically, however, *Alford* is distinguishable because it involved a guilty plea, a plea that ordinarily carries with it an inference that the defendant concedes his guilt, rather than, as here, a nolo contendere plea, which signifies that a defendant does not concede guilt but is willing to waive trial and accept the sentence.

guilty pleas but not to pleas of nolo contendere. *Id.* quoting 1A Charles Alan Wright, Federal Practice and Procedure: Criminal 3d § 177 (1999). Any other reading of W.R.Cr.P. 11(f) would obliterate the distinction between a guilty plea and nolo contendere plea. *Peitsmeyer,* ¶ 7. Thus, we have held that a district court need not obtain a factual basis when accepting a plea of nolo contendere so long as the charging document contains an accurate and complete statement of all the elements of the crime charged. *Id.*

[¶ 40] The United States Supreme Court recognizes these same general principles. In *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), the court cited *Hudson v. United States,* 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347 (1926) for the principle that a federal court has the power to impose sentence after accepting a plea of nolo contendere even though by such plea a defendant does not expressly admit his guilt, but waives his right to trial and authorizes the court to treat him as if he were guilty. The *Alford* court said: "Implicit in the *nolo contendere* cases is a recognition that the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his trial and accept the sentence." *Alford,* 400 U.S. at 36, 91 S.Ct. 160.

■ [¶ 41] The record presented in this case reflects that at the July 13, 2001, hearing, Mr. Berry attempted to change his plea from not guilty to nolo contendere.[7] After Mr. Berry entered his nolo contendere plea, the district court asked the prosecution what the State's evidence would show. The prosecutor described the events that occurred and the injuries sustained by the victims on December 22, 2000, and stated that the attack was unprovoked. The district court asked whether the defense was "satisfied the facts [presented by the prosecutor] would be the state's evidence." Defense counsel responded, "To an extent, yes, Your Honor." The court asked defense counsel to what extent the defense believed the evidence would not be as represented by the prosecutor. Defense counsel responded that the defense did not dispute that the injuries occurred or that they were caused by Mr. Berry. However, defense counsel stated, the issue of whether Mr. Berry was provoked into striking the victims was in dispute. The following discussion then ensued.

THE COURT: Well, just from the facts related by [the prosecutor], those being the facts he says would be established by the state's evidence, it appears to me that there would be a factual basis for a guilty plea, and of course, therefore, a factual basis for a plea of no contest.

I just want Mr. Berry to be clear that he is admitting that he did exactly what is contended in this information; that he unlawfully caused serious bodily injury to these two people intentionally[,] knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life.

You concede, [defense counsel], that there is a factual basis for every one of those elements?

[Defense counsel]: We do, Your Honor....

THE COURT: ... Well, certainly, Mr. Berry's not asserting self-defense, obviously, I guess, or you wouldn't be pleading.

[Defense counsel]: Well, we would be— in any other circumstances, yes, Your Honor, we would be asserting self-defense, but in order to do that, we would have to face

---

7. When the proceedings commenced on July 13, 2001, the court and the prosecutor believed Mr. Berry would be changing his plea to guilty. However, during the hearing, defense counsel advised the court Mr. Berry was present to plead no contest. In response, the prosecutor stated, "I don't have a problem with a no contest plea" and proceeded to lay the factual basis for the allegations made in the charging document. [R Vol. IV 52] Later on in the hearing, defense counsel advised the court that Mr. Berry was changing his plea in exchange for the State's

agreement not to amend the information to add a habitual offender allegation, which would make the potential penalty life imprisonment. [R Vol. IV 57] The prosecution remained silent. Thus, although the record is not as clear as W.R.Cr.P. 11(e) contemplates plea agreements will be, the parties implicitly agreed that Mr. Berry would plead nolo contendere to the charges alleged in the original information in order to avoid amendment of the information to allege he was a habitual criminal and the potential for a more severe penalty.

the charges of the state of habitual criminal status. We don't want to take a chance on that.

The court then attempted to clarify what the State's evidence would be. The prosecutor commented that Mr. Berry struck both victims with a sharp object, a weapon—an allegation that did not appear in the information or the statement of probable cause for arrest. Defense counsel stated there was no weapon involved. The court asked again whether the defense conceded the evidence presented would support the facts as stated by the prosecutor. Defense counsel asked, "In what regard, Your Honor?" The court then stated:

> I can't accept this plea, [defense counsel], with what's alleged in the complaint. I'm not comfortable doing that. I don't want to be back here in a week or a month, or some other time with the assertion he didn't really plead guilty to this offense through a no contest to it; just some ambiguity here that I think prevents the Court from accepting and entering this plea....

[R Vol. IV 60] From this excerpt, the district court's reasoning for not accepting Mr. Berry's plea is unclear. However, at a subsequent hearing on October 22, 2001, the district court attempted to clarify:

> I think it should be understood here the reason the Court did not accept that plea is that it was not a plea of guilty; that is, Mr. Berry said he was pleading guilty, but when asked for a factual basis, he said he committed no crime.
>
> Clearly, the Court could not accept a plea under those circumstances. I don't know what happened. It was presented to the court as a settlement—an agreement for change of plea.
>
> At any rate, it wasn't because Mr. Berry, as I recall—I haven't read the record, but it seemed to me at the time that he indicated he was doing nothing more than defending himself, and that he was not the aggressor, and he didn't commit any assault. So of course, they—the plea couldn't be accepted and entered.

Rather than justifying its earlier ruling, the district court's explanation for rejecting the plea reflects a misapprehension of the record and Wyoming law.

■ [¶ 42] Contrary to the district court's recollection that Mr. Berry offered a guilty plea at the change of plea hearing, Mr. Berry offered a *nolo contendere* plea. It has been the rule in Wyoming since 1980 that a trial court may accept a nolo contendere plea without first satisfying itself that the defendant committed the crime charged. *Steele,* 620 P.2d at 1028. All that is required for acceptance of a plea of nolo contendere, is that the information allege facts sufficient to support each of the elements of the crimes charged and the defendant's desire to plead to the charges alleged. There is no requirement that the defendant concede guilt. Rather, as stated in the excerpt from *Alford* quoted above and in Wyoming case law as well, the very purpose of the nolo plea is to allow entry of the plea and resolution of the case where a defendant is not willing to concede guilt but is willing to waive trial and accept sentence. Despite this long-standing rule, the district court refused to accept Mr. Berry's plea and its stated reason for doing so was Mr. Berry's unwillingness to concede that he committed the crime without provocation. This is contrary to Wyoming law and, thus, constituted an error of law under the circumstances.

■ [¶ 43] It is generally held that district courts have broad discretion in deciding whether to accept a nolo contendere plea. Wright, Federal Practice and Procedure: Criminal 3d § 177, p. 294. "It is wholly unlikely that refusal to accept the plea would be regarded as error on appeal." *Id.* However, we have said an abuse of discretion occurs when a district court:

> [A]cts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. *An abuse of discretion has been said to mean an error of law committed by the court under the circumstances.*

*Sampsell v. State,* 2001 WY 12, ¶ 6 17 P.3d 724, ¶ 6 (Wyo.2001) (citations omitted) (emphasis added). Given this definition and the

district court's patent error of law in this case, we have no choice but to find an abuse of discretion.[8]

[¶ 44] Had the district court correctly applied the law and accepted Mr. Berry's plea to the charges alleged at the time of the change of plea hearing, Mr. Berry would have proceeded to sentencing and the speedy trial concerns would have been irrelevant. Instead, the district court rescheduled the case for trial on September 17, 2001. As thoroughly discussed in the foregoing pages, the result was a series of further delays encompassing another 16 months during which time Mr. Berry remained incarcerated. While we are not convinced the delays were deliberate for the purpose of hampering the defense, we likewise are not persuaded, as we were in *Wehr*, 841 P.2d at 114, that the State prosecuted Mr. Berry's case in a "continuing manner at a deliberate pace." Additionally, we are troubled by some of the events that occurred, including the State's representation to this Court in August 2001 that an extension under W.R.Cr.P. 48 was warranted because Mr. Berry "did not go through with the plea agreement." The record clearly shows that to be an inaccurate statement of what occurred at the July 13, 2001, change of plea hearing and yet we granted the State's motion on the basis of the State's representation. That event, taken together with the prosecution's late efforts to amend, voluntarily dismiss and re-file charges and subsequent requests for continuances at a point when Mr. Berry had been incarcerated for over eighteen months, raise serious concerns. The State offers no explanation as to why getting this case to trial was not given priority over other matters once the new charges were filed. It, therefore, has failed in its burden of showing the delay

of more than 23 months was reasonable. Under the circumstances, the various periods of delay weigh heavily against the State. Considering exclusively the district court's error of law in rejecting Mr. Berry's plea, more than 500 of the 720 days during which he was incarcerated between arrest and trial are attributable to the State.

c. **Defendant's Assertion of His Right to Speedy Trial**

[¶ 45] It is not absolutely necessary that a defendant assert his right to speedy trial. *Harvey*, 774 P.2d at 95. However, whether he does so is a relevant and proper factor for us to consider in evaluating a speedy trial claim. *Id.* Mr. Berry, acting pro se or through counsel, asserted his right to speedy trial on eight separate occasions over the course of the nearly two years between his arrest and trial. He more than adequately asserted his right and, in light of his repeated assertion of the right, we do not find his failure to specifically object to continuances of particular significance. (See *Detheridge v. State*, 963 P.2d 233, 236 (Wyo.1998) where we similarly found the defendant's failure to reassert his demand or object to continuance to be of no moment in light of his demand for speedy trial.) The third factor of the *Barker* balancing test weighs heavily in Mr. Berry's favor.

d. **Prejudice to Defendant**

[¶ 46] The final factor we consider is prejudice to the defendant from the delay. Although an affirmative demonstration of prejudice is not a prerequisite to establishing a constitutional violation of the right to speedy trial, the question whether the defendant was prejudiced should be considered.

---

8. We note that W.R.Cr.P 11(a)(1)(A) authorizes courts to accept a nolo plea "only after due consideration of the views of the parties and the interest of the public in the effective administration of justice." In accordance with this rule, the district court had the discretion to reject the plea if asked to do so by one of the parties or mandated by the public interest in the effective administration of justice. The first factor, the views of the parties, has no application because the parties had negotiated an agreement contemplating a change of plea by Mr. Berry. The second factor, however, gave the court the discretion to reject the plea if it concluded that the public interest in the effective administration of justice would not be served by acceptance of the plea but would be better served by requiring Mr. Berry to face the habitual criminal charge. Other such reasons based upon the public interest and the effective administration of justice likewise would have supported rejection of the plea. No such reasons appear in the record, however, and we are compelled to conclude the district court abused its discretion in rejecting the plea for its stated reasons.

*Harvey,* 774 P.2d at 96, citing *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973). Prejudice may consist of: "1) lengthy pretrial incarceration; 2) pretrial anxiety; and, 3) impairment of the defense." *Id.* In the case of excessive delay, we have said prejudice should be presumed. *Caton,* 709 P.2d at 1266. We have also said:

> [T]he kinds of prejudice produced by long delays may be substantial even if the defendant's ability to defend himself is not impaired. The defendant's social relations, freedom of movement, and anxiety of public accusation are seriously affected when the delay is prolonged. These effects are precisely the kinds of prejudice that would be difficult for a defendant to demonstrate if he had the burden of proving prejudice.

*Id.* Similarly, the United State Supreme Court has said, lengthy delay

> may seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. These factors are more serious for some than for others, but they are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty.

*Moore,* 414 U.S. at 26–27, 94 S.Ct. 188.

[¶ 47] Mr. Berry's claim presents an unusual fact that did not exist in our other speedy trial cases. Mr. Berry was held in jail from the time of his arrest on January 23, 2001, until his trial nearly two years later. Even in prior cases where we have found speedy trial violations, most of the defendants served comparatively little jail time. In *Harvey,* for example, although the time between arrest and trial was 531 days, the defendant was incarcerated for only seven days. In *Sodergren v. State,* 715 P.2d 170

(Wyo.1986), the time between arrest and trial was over two years, but the defendant was not in custody pending trial. In *Warner,* ¶ 9, 658 days passed between issuance of the criminal complaint and trial, but the defendant was not arrested until six months before trial and was not, therefore, in custody for most of the 658–day period. See also *Campbell v. State,* 999 P.2d 649, 656 (Wyo.2000).

[¶ 48] Lengthy pre-trial incarceration is one of the factors giving rise to prejudice. It is a separate and distinct factor from pretrial anxiety, which we have identified as the least significant factor. Mr. Berry was incarcerated continuously from his arrest to his trial—720 days. During that time there is no question his liberty was severely restricted. He was not free on bond as other defendants in our speedy trial cases have been. His extended incarceration necessarily impacted his employment opportunities, financial resources and association. This factor weighs heavily in favor of Mr. Berry.

[¶ 49] In balancing the four factors, the conclusion is unavoidable that Mr. Berry's constitutional right to a speedy trial was violated. The delay attributable to the State was unreasonably long. Unlike cases where long delay is necessitated by a search for key witnesses or evidence, we are not persuaded the reasons for the delay caused by the State in this case justify Mr. Berry's prolonged incarceration. Mr. Berry repeatedly and relentlessly made demand for speedy trial. Despite those demands, he remained in jail continuously for 720 days.

[¶ 50] Constitutional speedy trial violations require reversal of a criminal defendant's conviction and dismissal of the charges. *Rodiack,* ¶ 11; *Warner,* ¶ 10. While this is not the result we desire, it is "the only possible remedy" given the policies underlying the constitutional right to a speedy trial. *Strunk v. United States,* 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973), citing *Barker,* supra.[9]

---

9. Unlike a violation of the constitutional right to speedy trial, a violation under W.R.Cr.P. 48 does not always require dismissal with prejudice. Subsection (b)(7) of the rule allows the state to re-file charges unless the defendant made a written demand for speedy trial or can demonstrate prejudice. Interestingly, however, had we found a Rule 48 violation in this case, the result would be the same, i.e. dismissal with prejudice, because Mr. Berry made repeated written demands for speedy trial.

## CONCLUSION

[¶51]   The judgment is reversed and the case is remanded to the district court with directions to set aside the judgment, vacate the sentence, and dismiss the information.