2001 WY 67

**Thomas Eugene WARNER, a/k/a Thomas Rodriguez, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 00–27.**

Supreme Court of Wyoming.

Aug. 1, 2001.

Rehearing Denied Aug. 2, 2001.

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Tina N. Hughes, Assistant Appellate Counsel, Representing Appellant. Argument by Ms. Hughes.

Gay Woodhouse, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Robin Sessions Cooley, Senior Assistant Attorney General, Representing Appellee. Argument by Ms. Cooley.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

GOLDEN, Justice.

[¶ 1] Appellant Thomas Eugene Warner appeals his convictions and sentences for second degree sexual assault and indecent liberties with a minor, contending that constitutional speedy and fair trial violations, prosecutorial misconduct, and unfair sentencing require that we reverse his conviction and sentence. Finding no reversible error, we affirm.

## ISSUES

[¶ 2] Warner states the issues as follows:
1. Did the trial court err in permitting the testimony of Dr. Shana Tubach, pediatrician, on the State's rebuttal, depriving Appellant of his constitutional right to a fair trial, and err in denying Appellant's motion for a mistrial?
2. Did the prosecutor commit prosecutorial misconduct when he specifically mentioned uncharged misconduct evidence in closing that the court had ruled inadmissible and when he vouched for and commented on the credibility of witnesses?
3. Was Appellant deprived of his constitutional right to a speedy trial?
4. Did the trial court abuse its discretion in determining the length of Appellant's sentences?

The State presents these issues for our review:
I. Whether the trial court erred in permitting the testimony of Dr. Shana Tubach on rebuttal, and whether the trial court erred in denying Appellant's motion for a mistrial on this claim?
II. Whether the prosecutor improperly mentioned uncharged misconduct evidence, and whether he improperly vouched for or commented on the credibility of the witnesses?
III. Whether Appellant was deprived of his constitutional right to a speedy trial?
IV. Whether the trial court abused its discretion in determining the length of Appellant's sentences?

## FACTS

[¶ 3] In 1978, when he was fifteen years old, Warner began living with his half-sister, her husband, and their three children in Cheyenne. He lived there continuously until 1981, returned briefly for a few months in 1983, and visited during the summer of 1984. In November of 1989, one of the children, CM, then a ninth-grader, reported to a school counselor that her uncle had molested her. The Department of Family Services (DFS) conducted an investigation in February of 1990, and closed the case without action. Warner moved to Georgia and returned for a visit in 1997. During that visit, Warner apologized to two of the children for molesting them. That apology was witnessed in part by the mother and another person, and the mother reported him to police.

[¶ 4] On September 2, 1997, the investigating police officer located Warner at a downtown bar and interviewed him outside. The officer testified that he was investigating Warner for felony sexual assault crimes, but informed Warner that he was not under arrest, and was free to leave at any time. After Warner agreed to speak with him, the officer described the allegations, and at that time, Warner admitted to the investigating officer that he had molested the children. Warner agreed to go to the police station where he then refused to speak further without an attorney. At trial, the officer testified that after Warner stated his intention to leave without making a statement, he received Warner's permission to take a photograph. The officer testified that he took the photograph because Warner had earlier mentioned that he planned to return to his daughters in Norcross, Georgia, as soon as possible, and the officer wanted to have a photograph on file in the event that an arrest warrant issued. Because he was not in custody, Warner was free to and did leave.

[¶ 5] The State's investigation indicated that Warner had harmed all three children and, on September 12, 1997, a warrant was issued for his arrest. At some point, Warner apparently returned to Georgia, because in February of 1999, following a stop for a traffic violation in Georgia, the warrant showed on an NCIC check, and Warner was returned to Wyoming for trial on two counts of second degree sexual assault, Wyo. Stat. Ann. § 6–2–303(a)(v), and two counts of immoral acts with a minor, Wyo. Stat. Ann. § 14–3–105(a). The amended information stated that he had committed all crimes dur-

ing the period of February 1983 through May 1983, and, at that time, the sexual assault victim was less than twelve years of age and Warner was at least four years older than the victim. In 1983, Warner was 19 years old.

[¶ 6] Warner was arraigned on March 3, 1999, and, on June 23, 1999, filed a motion to dismiss for lack of speedy trial. That motion was denied after hearing. In a pretrial hearing concerning the admissibility under W.R.E. 404(b) of Warner's uncharged sexual abuse of another child, SP, the trial court stated:

> I don't think the court can either grant or deny the motion. The notice is here. He's got, I think, the testimony of the earlier witnesses. So we'll decide as these witnesses are called. I think we'll have to hear their testimony initially outside the presence of the jury. So I'm going to proceed on that basis.

Trial was held on July 12–14, 1999. During the trial, the court excused the jury, and the prosecutor questioned CM about her personal observations of Warner's sexual abuse of SP as an offer of proof for admission of the 404(b) evidence. Following that proffer, the trial court ruled that separate uncharged acts perpetrated against SP were inadmissible.

[¶ 7] Despite this ruling, during cross-examination of the DFS social worker, the prosecutor conducted the following cross-examination:

Q. [Prosecutor]...that's the date you interviewed [CM], isn't it?

A. It is.

Q. And the date you reduced this report to writing was, I believe from your prior testimony the 16th?

A. That is correct.

Q. Two weeks later, okay. You noted in your report that you started out with talking to [CM] about good touch/bad touch, body parts, had a good understanding, it was then asked if anyone had ever touched her and she responded that her Uncle Tom had, Tom [Warner], [CM] also expressed that Tom had also abused her cousin—

[Defense Counsel]: Objection, Your Honor.

Q. [Prosecutor]—[SP]-

[Defense Counsel]: This is getting into prior information. May we approach, Your Honor?

[The Court]: Well, I'll sustain the objection.

[Prosecutor]: I'll rephrase. In the course of this interview as reflected by your report, did [CM] identify to you someone else that had been abused?

[Defense Counsel]: Objection, Your Honor. This is—

[The Court]: Overruled.

[Defense Counsel]: Your Honor,—Your Honor, may we approach the bench?

[The Court]: No, no, you may not.

[Defense Counsel]: I would like to make a record, Your Honor.

[The Court]: Ask your—Ask another question, Mr. Forwood.

* * *

[Prosecutor]: You reflected in your notes that [CM] identified someone else that had been abused?

[Defense Counsel]: Objection to 404(b), Your Honor, previous court ruling—

[Court]: That question has been asked and answered. Would you please ask the next question?

Based on this conduct of the prosecutor, the defense counsel renewed its motion for judgment of acquittal and moved for mistrial. Although the district court determined that the prosecutor's question was improper, it found that because the testimony thus far indicated that Warner had made admissions, no prejudice had resulted and denied both motions.

[¶ 8] Defense counsel presented Ms. Huylar, the Department of Family Services social worker who, in 1990, had investigated CM's allegations against Warner. Ms. Huylar described her investigation of the allegations and testified that the investigation ended by her determination that the allegations could not be substantiated. On rebuttal and over defense's objection, the State had a pediatrician testify as an expert concerning proper forensic interview technique and the general behavior of child abuse victims. Be-

fore cross-examination, the defense requested a mistrial which was denied. The jury convicted Warner, and he was sentenced to consecutive sentences on each of the four counts. This appeal followed.

## DISCUSSION

*Speedy Trial*

[¶ 9] Warner contends that his right to speedy trial was violated because trial occurred 658 days after the filing of the criminal complaint. W.R.Cr.P. 48 governs the time period between arraignment and trial; however, delays between the time charged and the time of trial are subject to the Sixth Amendment. *Doggett v. United States*, 505 U.S. 647, 651, 655–56, 112 S.Ct. 2686, 2690, 2693–93, 120 L.Ed.2d 520 (1992); *Jennings v. State*, 4 P.3d 915, 921 (Wyo. 2000). This Court examines de novo the constitutional question of whether a defendant has been denied a speedy trial in violation of the Sixth Amendment. We review the district court's factual findings for clear error.

[¶ 10] The Sixth Amendment to the United States Constitution guarantees that the accused shall enjoy the right to a speedy and public trial. In deciding whether a defendant has been denied a speedy trial, courts must balance 1) the length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. *Campbell v. State*, 999 P.2d 649, 655 (Wyo.2000); *Barker v. Wingo*, 407 U.S. 514, 530, 533 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). None of these factors alone is sufficient to establish a speedy trial violation, "[r]ather they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533, 92 S.Ct. at 2193. "The determinative dynamic in our inquiry is whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial." *Wehr v. State*, 841 P.2d 104, 112 (Wyo.1992). When a speedy trial violation is found to have occurred, the charges must be dismissed. *Barker*, 407 U.S. at 522, 92 S.Ct. at 2188.

[¶ 11] The State contends that the district court properly denied Warner's motion to dismiss for speedy trial violation because the pretrial delay resulted when Warner fled the jurisdiction before a warrant could issue for his arrest. Although we disagree that the record supports the State's contention, we find that an application of the four Barker factors leads us to conclude that Warner was not denied his right to a speedy trial in violation of the Sixth Amendment.

### A. Length of Delay

[¶ 12] "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *Doggett*, 505 U.S. at 651–52, 112 S.Ct. at 2690. The State concedes that the 658–day delay is presumptively prejudicial. *See Campbell*, 999 P.2d at 655–56. Accordingly, we shall examine the other three factors.

### B. Reason for the Delay

[¶ 13] The State contends that the length of the delay was caused by Warner's fleeing the jurisdiction. The record shows that at the time of the interview, police knew Warner was visiting from Georgia and planned to return to Georgia. The record also shows that the police told Warner that he could not return to his half-sister's home where he was staying during his visit. The State was unable to show that Warner knew that a warrant for his arrest had issued, or that the police attempted to serve it on Warner either in Cheyenne or Georgia. According to *Doggett*, when the reason for delay is failure of the police to use reasonable diligence to seek the defendant and serve the arrest warrant, the record warrants a finding of official negligence, and this factor will weigh in favor of the defendant. *Doggett*, 505 U.S. at 656–57, 112 S.Ct. at 2693. The State has not proved that Warner caused the delay; however, the record is insufficient to determine whether the police did not use reasonable diligence to seek out Warner and serve the arrest warrant. Accordingly, this factor is neutral.

## C. Defendant's Assertion of His Right

[¶ 14] This factor would weigh heavily against Warner if it were shown that he knew of the warrant for his arrest at the time that it issued rather than when he was actually arrested. The record does not show that Warner knew the warrant had issued. After he was arrested, he timely filed motions to dismiss asserting violation of his right to speedy trial, and this factor again weighs in his favor.

## D. Prejudice to the Defendant

[¶ 15] Warner does not suggest that the reason for the delay entitles him to relief; instead, he contends that the delay prejudicially impaired his defense. As the United States Supreme Court recognized, the importance of presumptive prejudice increases with the length of delay. *Doggett*, 505 U.S. at 655–56, 112 S.Ct. at 2692–93.

Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him.

*Id.* at 656–57, 112 S.Ct. at 2693.

[¶ 16] We agree with Warner that the length of his delay is not so substantial that he is relieved of showing actual trial prejudice. He states that the delay allowed the witnesses to extensively discuss their statements with each other, and left him unable to locate a police officer who had investigated the 1989 charges and found them to be unsubstantiated. The State points out that a DFS worker who did testify at trial, not a police officer, found the charges to be unsubstantiated. Warner does not point to any exculpatory evidence that was lost, and any prejudice by the witnesses' discussions with each other would have been minimal. This factor, therefore, weighs heavily in favor of the State.

[¶ 17] Balancing these factors in accordance with *Barker*, we hold that Warner cannot establish a Sixth Amendment violation. Any official negligence responsible for the delay between the date that the warrant issued and arrest does not weigh in Warner's favor although, after arrest, he timely asserted his speedy trial rights. Also, Warner did not demonstrate any impairment of his defense, and the delay was not so long that dismissal should be virtually automatic. No other facts or particular circumstances exist that require us to decide that factors in Warner's favor outweigh his failure to make the required showing of prejudice, and we find no speedy trial violation.

### Prosecutorial Misconduct

[¶ 18] Prosecutorial misconduct "has always been condemned in this state." *Earll v. State*, 2001 WY 66, ¶ 9, 29 P.3d 787, ¶ 9 (Wyo.2001) (quoting *Valerio v. State*, 527 P.2d 154, 156 (Wyo.1974)). Whether such misconduct has been reviewed on the basis of harmless error, W.R.Cr.P. 52(a) and W.R.A.P. 9.04, or on the basis of plain error, W.R.Cr.P. 52(b) and W.R.A.P. 9.05, this Court has focused on whether such error, as the State concedes exists in this case, affected the accused's "substantial rights." The accused's right to a fair trial is a substantial right. Wyo. Const. art. 1, §§ 6, 9, 10; *and see e.g., Jones v. State*, 580 P.2d 1150, 1154 (Wyo.1978). "Before we hold that an error has affected an accused's substantial right, thus requiring reversal of a conviction, we must conclude that, based on the entire record, a reasonable possibility exists that, in the absence of the error, the verdict might have been more favorable to the accused." *Earll*, ¶ 9.

[¶ 19] The trial court ruled that any uncharged misconduct against SP was inadmissible. During the State's cross-examination of DFS social worker, Ms. Huyler, the prosecutor inquired several times about defendant's abuse of SP. Defense counsel vigorously objected; however, while agreeing that the inquiry was improper, the trial court determined that defendant had not been prejudiced and continued the trial. On appeal, Warner contends that, by inquiring, the prosecutor committed misconduct warranting reversal and remand for new trial.

[¶ 20] Inquiry into evidence previously ruled inadmissible may be allowed when cross-examination may properly im-

peach the defendant, or when the defendant has "opened the door." *Rubio v. State*, 939 P.2d 238, 244 (Wyo.1997); *Espinoza v. State*, 969 P.2d 542, 546 (Wyo.1998), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 52 (1999). "When the defendant initiates a line of questioning, the prosecutor is entitled to make a permissible inquiry without crossing into prosecutorial overkill." *Id.* The defense did nothing that would permit this line of questioning, and we find that the trial court correctly ruled that the prosecutor's inquiries were improper and error. We must, however, separately consider the ruling that Warner was not prejudiced by the prosecutorial misconduct.

[¶ 21] "Appropriate objections and subsequent curative instructions may cure an error at trial." *Rubio*, 939 P.2d at 244. In this case, the trial court did not issue a curative instruction to cure the error at trial. We must also consider that although the trial court initially sustained defense counsel's objection, the prosecutor rephrased the question and again inquired about the same uncharged abuse of SP. That objection was overruled, but as the trial court's later statements indicate, overruling was a mistake. The prosecutor then asked the same question a third time before the court controlled the line of questioning. The prosecutor emphasized the abuse of another child, and the error was not cured.

[¶ 22] Under our harmless error analysis, we must judge whether the jury's verdict might have been different but for the prosecutorial misconduct. We described the standard for evaluating trial error to be in consonance with the standard followed by the United States Supreme Court:

Some aids to right judgment may be stated more safely in negative than in affirmative form. Thus, it is not the appellate court's function to determine guilt or innocence. Nor is it to speculate upon probable reconviction and decide according to how the speculation comes out. Appellate judges cannot escape such impressions. But they may not make them sole criteria for reversal or affirmance. Those judgments are exclusively for the jury, given always the necessary minimum evidence legally sufficient to sustain the conviction unaffected by the error.

But this does not mean that the appellate court can escape altogether taking account of the outcome. To weigh the error's effect against the entire setting of the record without relation to the verdict or judgment would be almost to work in a vacuum. In criminal causes that outcome is conviction. This is different, or may be, from guilt in fact. It is guilt in law, established by the judgment of laymen. And the question is, not were they right in their judgment, regardless of the error or its effect upon the verdict. It is rather what effect the error had or reasonably may be taken to have had upon the jury's decision. The crucial thing is the impact of the thing done wrong on the minds of other men, not on one's own, in the total setting.

This must take account of what the error meant to them, not singled out and standing alone, but in relation to all else that happened. And one must judge others' reactions not by his own, but with allowance for how others might react and not be regarded generally as acting without reason. This is the important difference, but one easy to ignore when the sense of guilt comes strongly from the record.

If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. But if one cannot say, with fair assurance after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos v. United States*, 328 U.S. 750, 763–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946) (citations and footnotes omitted); *and see, e.g., Brecht v. Abrahamson*, 507 U.S. 619,

637, 113 S.Ct. 1710, 1721, 123 L.Ed.2d 353 (1993).

[¶ 23] Among the factors to be considered are the nature and gravity of the error, the prosecutor's duty to do justice and refrain from improper methods, the likely impact on the average juror, the quality of the prosecution's case, and the closeness of the case. *Earll*, ¶ 16. Our review of the record shows that the evidence against Warner was formidable. Generally, the primary issue in child molestation cases is the defendant's credibility versus that of the child's, but in this case, Warner voluntarily and unequivocally admitted to his actions at least twice to witnesses other than the victims. Uncharged misconduct evidence is generally excluded, however, because it is highly prejudicial. *But see Sturgis v. State*, 932 P.2d 199, 203 (Wyo.1997). In Warner's case, these three questions about uncharged misconduct against SP followed the State's case-in-chief. Although the State charged Warner with four counts of sexual abuse of two victims for a four-month period in 1983, the trial court admitted uncharged misconduct evidence against the victims that revealed Warner had continuously abused them over a period of years. The volume of admissible uncharged misconduct testimony was so great that it is doubtful that the jury's verdict was swayed by three questions concerning another victim. Accordingly, we conclude that no factor indicates that the jury's verdict was based on this inadmissible evidence, and we find that the error is harmless.

*Expert Rebuttal Evidence*

[¶ 24] After the defense rested, the prosecution notified the court that it would present a rebuttal witness. That witness offered expert testimony on proper forensic interviewing techniques of child abuse victims, the frequency with which physical evidence of sexual abuse is found, and the general behavior of child abuse victims. The defense's objection during the testimony on grounds that the testimony was improper rebuttal was overruled, and a subsequent motion for mistrial on grounds of discovery violations and improper rebuttal evidence was denied.

[¶ 25] The record shows that despite a pretrial order requiring the prosecution to provide discovery under W.R.Cr.P. 16 and 26.2, the expert testified without notice to the defense. In *Seivewright v. State*, 7 P.3d 24 (Wyo.2000), we held that when a defendant alleges that the State has failed to comply with W.R.Cr.P. 26.2, the district court is required to hold a hearing and determine if any discovery violation has occurred, and the failure for the district court to hold a hearing is reversible error. *Id.* at 28. In this case, Warner waited until after the expert had testified before moving for a mistrial on grounds that he had not received pretrial notice that the expert would testify and had not been given her curriculum vitae, but he did not specify a W.R.Cr.P. 26.2 violation. Under these circumstances, *Seivewright* would not apply; instead, we apply an abuse of discretion standard to the trial court's failure to grant a motion for mistrial for violation of the pretrial order. *See Lawson v. State*, 994 P.2d 943, 946–47 (Wyo.2000). "[A] mistrial is an extreme and drastic remedy which should be resorted to only when there has been an error so prejudicial that justice could not be served by continuing the trial." *Ramirez v. State*, 739 P.2d 1214, 1220 (Wyo.1987). The discovery violation did not warrant granting a mistrial.

[¶ 26] Warner contends that Ms. Huylar testified that she did not recall her interview with CM and refreshed her memory from her report. He contends that the defense's direct examination elicited only that Ms. Huylar's report indicated CM's mother was doubtful about the allegations, that CM alleged repeated intercourse, and that CM's physical examination did not show any evidence of repeated penetration. In direct examination Ms. Huylar did not offer any opinion about CM's credibility, her delay in reporting the abuse, how victims behaved as a result of threats or any other topics addressed by Dr. Tubach. Those issues were brought out during the State's cross-examination of Ms. Huylar. That cross-examination effectively had Ms. Huylar concede that her interviewing technique of CM was different as "night and day" from what she currently does, and that it was "common" for a child to refuse to speak further and say nothing had happened. Plainly, the record supports Warner's contentions that the

State's rebuttal evidence was not admitted to rebut any evidence presented by the defense.

[¶ 27] In sexual assault cases, expert testimony may be used to explain a victim's behavior. *Chapman v. State,* 2001 WY 25, ¶ 12, 18 P.3d 1164, ¶ 12 (Wyo.2001). The admission of evidence in rebuttal which is objected to as not proper rebuttal but which tends to discredit the defendant's case is within the discretion of the trial judge. *State v. Alexander,* 78 Wyo. 324, 345, 324 P.2d 831, 839 (1958), *cert. denied,* 363 U.S. 850, 80 S.Ct. 1630, 4 L.Ed.2d 1733 (1960). Rebuttal evidence is also proper if it tends to refute or contradict the effect of the opponent's evidence. *Id.* Rebuttal evidence would also be proper to explain the effect of the opponent's evidence; however, it is improperly admitted if rebuttal evidence concerns issues not raised by the opponent. *Id.*

[¶ 28] The expert evidence offered in this case can be classified as falling within the emerging field of "social framework and syndrome" evidence and is considered a proper subject for expert testimony, particularly in sexual assault cases. *See Ryan v. State,* 988 P.2d 46, 54 (Wyo.1999); *Griswold v. State,* 994 P.2d 920, 928 (Wyo.1999). The question presented, however, is whether the State may offer this type of expert testimony to rebut Ms. Huylar's testimony concerning the facts of her investigation. On similar facts, we found that a DFS investigator had been offered by the defense as a hostile witness with expertise discrediting the credibility of the victim. *Metzger v. State,* 4 P.3d 901, 905 (Wyo.2000). Consequently, the defense opened the door to the State's cross-examination of that witness eliciting testimony that the investigator did believe that the victim had been truthful during the investigation. *Id.* at 906. In this case, the defense's direct examination did not raise any issues that the State could properly rebut by an expert witness whom it had prepared but failed to give notice of to the defense. The trial court erred in admitting this evidence.

[¶ 29] Evidentiary rulings that are in error will not be disturbed on appeal if the error is harmless. *Ryan,* 988 P.2d at 52. Warner contends that the error is reversible because the State effectively used the rebut-

tal expert to vouch for the credibility of CM. Expert testimony vouching for the victim's credibility violates W.R.E. 702; however, incidental bolstering of the victim's credibility alone does not make the expert testimony improper. *Chapman,* ¶ 20. Testimony about the general symptoms common to victims of sexual abuse and how those symptoms relate to the victim is permissible; testimony that the expert believed the victim's account or determined that the victim "had been raped" is reversible error. *Id.* Warner claims that the prosecutor used hypothetical questions that were thinly concealed references to the specific facts of CM's testimony in an attempt to bolster her credibility. Warner does not present an argument that use of a hypothetical question is reversible error, and we will not address it. We do not reverse when an expert's testimony has the incidental effect of supporting the victim's credibility. *Id.* Incidental bolstering of the victim's credibility alone does not make the expert testimony improper. Focusing on general information within her expertise and testifying how those symptoms related to the victim do not violate our rule against vouching. *Id.*

[¶ 30] Our concern, therefore, is whether it is harmless error to improperly admit expert rebuttal testimony. The factors examined in our earlier harmless error analysis are applicable here, and we again conclude that this error is also harmless, primarily because evidence against Warner was overwhelming, and this inadmissible evidence was not the basis for the jury's conviction. Additionally, we do not find that the two errors combined to deprive Warner of a fair trial.

[¶ 31] Nevertheless, the record indicates that not only did the prosecutor violate a W.R.E. 404(b) pretrial ruling, the prosecutor ignored the pretrial order requiring that he notify the defense of expert witnesses, sought to circumvent that order by having a prepared expert witness testify on rebuttal rather than in his case-in-chief, and, in doing so, has walked a fine line. Our rule is well-settled that the prosecution must present all of his evidence on an issue and is prohibited from splitting its presentation of the evidence in order to gain an unfair advantage over the defense. *Alexander,* 78

Wyo. at 345, 324 P.2d at 839. In addition, the prosecutor's failure to disclose his expert injected potentially reversible error into this case. *Seivewright,* 7 P.3d at 28. Paying attention to the rule that conduct which offends the public sense of fair play is harmful error, *Ryan,* 988 P.2d at 52–53, we have satisfied ourselves that Warner was not prejudiced by any deliberate, intentional, or reckless conduct on the part of the State, and this conviction is affirmed.

*Length of Sentences*

[¶ 32] Warner was sentenced to terms of incarceration of not less than four nor more than six years for each of two convictions for second degree sexual assault. He was also sentenced to terms of not less than three years nor more than six years for each of the two counts of immoral acts with a minor. All terms of confinement are to be served consecutively to each other. Warner challenges this lengthy sentence. When a criminal sentence is within the limits set by statute, the sentence will not be overturned absent an abuse of discretion. *Smith v. State,* 922 P.2d 846, 848 (Wyo.1996). We review a legally prescribed sentence; however, the defendant has the high burden of showing an abuse of discretion, procedural conduct which is prejudicial to him, and circumstances which manifest inherent unfairness and injustice, or conduct offending the public sense of fair play. *Id.* We do not engage in lengthy analyses of comparable sentences for similar offenses except in cases

where the mode of punishment is unreasonable, or where the relative length of sentence is extreme when compared to the gravity of the offense. *Id.* at 849.

[¶ 33] Warner contends that the district court abused its discretion in ignoring the unusual circumstance that he had committed these crimes many years ago while a troubled teenager. The record shows that the trial court discussed the length of time since the abuse, Warner's behavior in "his contemporary life," and whether the maximum sentence of sixty years was appropriate on these particular facts. The court concluded that the maximum sentence was not justified in this case, but that a substantial sentence was required.

[¶ 34] The ultimate issue is whether or not the court could have reasonably concluded as it did. *Suval v. State,* 6 P.3d 1272, 1274 (Wyo.2000). In evaluating the reasonableness of a criminal sentence, we give consideration to the crime and its circumstances along with the character of the defendant. *Id.* The trial court discussed the unique facts of this case and imposed a sentence after deliberate consideration of them. We find no abuse of discretion.

[¶ 35] The order of judgment and sentence is affirmed.