# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 1

**OCTOBER TERM, A.D. 2015**

**January 5, 2016**

JOHN HENRY KNOSPLER, JR.,

Appellant
(Defendant),

v.

S-15-0158

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Natrona County*
*The Honorable W. Thomas Sullins, Judge*

*Representing Appellant:*
> Timothy K. Newcomb, Appellate Consultation, Laramie, Wyoming; Joseph H. Low IV, The Law Firm of Joseph H. Low IV, Long Beach, California. Argument by Mr. Newcomb.

*Representing Appellee:*
> Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Joshua C. Eames, Assistant Attorney General. Argument by Mr. Eames.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE:** **This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BURKE, Chief Justice.**

[¶1]   Appellant, John Henry Knospler, Jr., was convicted of second-degree murder after he shot and killed James Baldwin in the parking lot of Racks Gentlemen's Club in Casper, Wyoming.  He asserts error in the district court's evidentiary rulings and in the jury instructions.  We affirm Appellant's conviction.

## *ISSUES*

[¶2]   Appellant presents five issues, which we restate as follows:

1. Did the district court abuse its discretion in excluding evidence relating to the victim's criminal history?

2. Did the district court abuse its discretion in excluding expert testimony purporting to establish a link between viewing depictions of pornography and a character trait for aggression?

3. Did the district court err in denying Appellant's request to instruct the jury regarding self-defense in a home or habitation?

4. Did the district court err in instructing the jury, in relation to Appellant's claim of self-defense, that it must determine whether Appellant or the victim was the first aggressor?

5. Did the district court abuse its discretion in permitting the State to introduce 404(b) evidence despite the State's late notice of its intent to use the evidence?

## *FACTS*

[¶3]   On the night of October 3, 2013, Appellant and the victim, James Baldwin, separately visited Racks Gentlemen's Club in Casper.  Around 10:30 p.m., Appellant was asked to leave after he was observed with marijuana inside the bar.  Appellant left and sat in his vehicle in the parking lot.  Shortly before midnight, bar employees found the victim asleep at a bar table and asked him to leave.  The employees offered to call a cab for the victim, but he stated that his friends were waiting for him in a car parked outside the bar. The victim exited to the parking lot and approached the vehicle occupied by Appellant. The victim pulled on the passenger door handle and knocked on the window.  When he did not get an answer, the victim walked around to the driver's side and leaned on the

1

door. Appellant then shot and killed the victim.

[¶4]    After the shooting, Appellant drove away from the scene and bar employees called the police. Shortly thereafter, a sheriff's deputy observed a vehicle matching the description of the vehicle that had been reported. The deputy stopped Appellant after he observed him driving 20 miles per hour over the speed limit. When the deputy approached the vehicle, he smelled a strong odor of alcohol and marijuana. The deputy also noticed that the driver's door window was missing and appeared to have been broken. Prior to his arrest, Appellant told the officer that he did not know how the window had been broken and that he had not been in any altercation that night.

[¶5]    As a result of the incident on October 3rd, the State charged Appellant with one count of second-degree murder. Prior to trial, Appellant filed a notice of his intent to introduce evidence of the victim's criminal history to show that he was the first aggressor. Appellant sought to introduce evidence of the victim's arrests for breach of the peace, battery and interference with a police officer, and eluding police, as well as his arrest for 19 counts of conspiracy to commit vehicular burglary. Ultimately, the district court allowed evidence of the victim's arrest for battery and interference with a police officer, but excluded evidence relating to the remaining arrests.

[¶6]    Appellant also filed a pretrial motion seeking to introduce evidence of the victim's internet search history. Appellant claimed the search history showed that the victim had viewed websites depicting pornography and bestiality. Appellant argued that these sites showed that the victim was likely to engage in aggressive behavior. The district court granted the State's motion to exclude the evidence, ruling that it was inadmissible under W.R.E. 403 because the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

[¶7]    Four days prior to trial, Appellant filed a "Motion for Exception and Offer of Proof" which sought admission of the websites as well as expert testimony relating to the characteristics of persons who view images depicting child pornography and bestiality. In his motion, Appellant claimed that two proposed expert witnesses would testify that "it is common for those individuals that view bestiality pornography to be aggressive in nature and commit violent crimes[.]" The district court addressed the matter during a bench conference on the first day of trial. After noting that Appellant had waited until four days prior to trial to identify an expert, the district court denied the motion and again found that the probative value of the evidence was substantially outweighed by the danger for unfair prejudice.

[¶8]    On November 19, 2014, the State provided notice of its intent to introduce testimony of three witnesses under Rule 404(b). Appellant filed a motion to exclude the evidence on the grounds that it was irrelevant and constituted inadmissible hearsay. At the pretrial conference, the State noted that the proposed testimony had only been

2

recently discovered after re-interviewing the witnesses and that the evidence had been immediately disclosed to Appellant. The district court denied the motion. After the witnesses testified at trial, Appellant filed a motion to strike the testimony of two of the witnesses because the State had violated the district court's deadline to disclose 404(b) evidence. The district court also denied that motion.

[¶9] At trial, Appellant claimed that he had acted in self-defense when he shot and killed the victim. According to Appellant, the victim punched out Appellant's car window and assaulted him inside his vehicle before Appellant shot him. In accordance with this theory, Appellant proposed jury instructions setting forth rules relating to self-defense in a home or habitation and specifically included "vehicles" in the definition of "habitation." The district court declined to give the requested instructions.

[¶10] The jury found Appellant guilty of second-degree murder and Appellant was sentenced to 30 to 50 years in prison. This appeal followed. Additional facts will be set forth as necessary in the discussion below.

## *DISCUSSION*

### Issue 1: Exclusion of the victim's criminal history

[¶11] In his first issue, Appellant claims the district court abused its discretion by excluding evidence relating to the victim's criminal history. Appellant claims the evidence should have been admitted because it indicated the victim had an "escalating criminal history." The State responds that the district court did not abuse its discretion in excluding the evidence because the victim's criminal history did not establish that he engaged in activity involving life-threatening behavior or behavior which may have resulted in serious bodily harm.

[¶12] A district court's evidentiary rulings are reviewed for an abuse of discretion.

> Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence. This Court will generally accede to the trial court's determination of the admissibility of evidence unless that court clearly abused its discretion.

*Lawrence v. State*, 2015 WY 97, ¶ 10, 354 P.3d 77, 80 (Wyo. 2015) (quoting *Brock v. State*, 2012 WY 13, ¶ 23, 272 P.3d 933, 939-40 (Wyo. 2012)). "The ultimate issue that we decide in determining whether there has been an abuse of discretion is whether or not the court could have reasonably concluded as it did." *Lawrence*, ¶ 10, 354 P.3d at 80

(quoting *Edwards v. State*, 973 P.2d 41, 45 (Wyo. 1999)).

[¶13] W.R.E. 404 and 405 specifically address the admissibility of evidence of a victim's character. *See Taul v. State*, 862 P.2d 649, 655 (Wyo. 1993). With certain exceptions, evidence of a person's character is not admissible to prove that the person acted in conformity therewith on a particular occasion. W.R.E. 404(a). An accused may, however, offer evidence of a pertinent character trait of a victim to show that the victim was the first aggressor. W.R.E. 404(a)(2).

[¶14] W.R.E. 405 addresses the methods of proving character:

> (a) *Reputation or opinion*. In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

> (b) *Specific instances of conduct*. In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, or is in issue under Rule 404(a)(2), proof may also be made of specific instances of his conduct.

The comment accompanying W.R.E. 405 states: "The purpose of the added language in subdivision (b) is to [e]nsure that the accused in assault or homicide cases may introduce evidence of specific instances of the victim's conduct to prove that the victim was the first aggressor."

[¶15] In *Edwards*, 973 P.2d at 47, we explained that evidence of a victim's criminal history is admissible in homicide cases if it shows that the victim "engaged in life-threatening behavior or in behavior which may have resulted in serious bodily harm:"

> In *Braley v. State*, 741 P.2d 1061 (Wyo. 1987), we considered the admissibility of the evidence of a victim's criminal record. The defendant in that case argued that the trial court erred by not allowing him to present evidence of the victim's criminal history, which would have supported his claim that he killed the victim in self-defense. 741 P.2d at 1067-69. We considered W.R.E. 401, 402, 403, and 404 and determined that a victim's criminal record may be relevant if it illustrates that the victim engaged in life-threatening behavior or in behavior which may have resulted in serious bodily harm. *Id.* In the final analysis, however, we concluded

4

that the trial court did not err when it excluded the evidence because, under W.R.E. 403, the probative value of the evidence was outweighed by its prejudicial effect.

The evidence at issue in *Edwards* related to an incident in which the victim held his wife hostage and fired a gunshot into the air. We held that evidence of the incident was admissible after finding that the victim engaged in life-threatening behavior when he fired a gunshot. *Id.*, 973 P.2d at 47. However, we concluded that the defendant was not prejudiced by the trial court's refusal to allow testimony regarding the episode because the general nature of the incident had already been presented to the jury. *Id.*

[¶16] As noted above, the district court admitted evidence of the victim's arrest for battery and interference with a police officer after determining that the incident involved behavior which may have resulted in serious bodily harm. Appellant contends that all of the victim's arrests should have been admitted because they demonstrated an "escalating" criminal history. We do not agree. As noted above, Rule 404 limits admissibility of evidence relating to the victim's character. In a homicide case, the defendant may introduce evidence of specific instances of the victim's conduct to prove the victim was the first aggressor only where those instances involve life-threatening behavior or behavior which may have resulted in serious bodily harm. Appellant did not produce evidence that the victim's arrest for conspiracy to commit vehicular burglary or his arrest for breach of the peace involved life-threatening behavior or behavior which may have resulted in serious bodily harm. Accordingly, we are unable to conclude that the district court abused its discretion in excluding evidence relating to those arrests.

## Issue 2: Exclusion of expert witness testimony

[¶17] In his second issue, Appellant contends the district court abused its discretion in excluding Appellant's proposed expert testimony regarding the character traits of persons who view depictions of child pornography and bestiality. The district court concluded that the proposed testimony was inadmissible because Appellant did not timely provide witness statements as ordered by the court and because the probative value of the evidence was outweighed by the danger of unfair prejudice under W.R.E. 403. The district court also noted that there had been no case law cited supporting the admissibility of the proposed evidence. In light of the delay in disclosing the expert testimony and the lack of any legal authority to support its admission, the court concluded that it was left without any "clear showing of how this evidence could possibly have application to the defense in this case." We review the district court's decision to exclude the testimony for an abuse of discretion. *Lawrence*, ¶ 10, 354 P.3d at 80.

[¶18] Appellant does not present pertinent authority or cogent argument in support of this issue. Appellant acknowledges that he gave notice of the proposed expert testimony after the court's deadline to exchange witness statements. He claims, however, that the

delay was inconsequential because notice of the specific websites viewed by the victim was "sufficient upon which to base an expert opinion." In making this argument, Appellant confuses disclosure of the proposed expert testimony with disclosure of the evidence upon which the expert testimony was purported to be based.

[¶19] Further, as noted above, a victim's character for aggression may be proven by reputation, opinion, or specific instances of conduct pursuant to W.R.E. 405. Expert opinion on the link between aggressive behavior and viewing child pornography or bestiality does not constitute proof of the victim's character by one of the methods permitted by Rule 405. We note that other courts have also reached the conclusion that expert opinion evidence is not the kind of evidence contemplated by Rule 405. *See State v. Ambrosia*, 67 Ohio App. 3d 552, 562, 587 N.E.2d 892, 899 (1990); *State v. Jessen*, 130 Ariz. 1, 7, 633 P.2d 410, 416 (1981).

[¶20] The expert testimony at issue is very similar to the kind of profile evidence that we have previously determined to be inadmissible. In *Ryan v. State*, 988 P.2d 46 (Wyo. 1999), this Court concluded that the district court improperly admitted expert testimony on the characteristics of batterers and the conduct they tend to exhibit to show that the defendant had acted in conformity with those characteristics:

> Finding guilt by reference to common characteristics of a class of individuals to which one belongs raises the specter of profile evidence. Profile or syndrome evidence is developed through expert testimony and tends to classify people by their shared physical, emotional, or mental characteristics. *State v. Percy*, 146 Vt. 475, 507 A.2d 955, 960 (1986) (citing 1 J. Weinstein & M. Berger, *Weinstein's Evidence* § 401[10], at 88–91 (1985)). In the context of drug courier profiles, a profile has been characterized as,
>
> > an "informal compilation of characteristics often displayed by those trafficking in drugs," and as an "'abstract of characteristics found to be typical of persons transporting illegal drugs.'" Similarly, Chief Justice Rehnquist has described the profile as essentially an investigative tool involving characteristics recognizable to trained officers. "A 'profile' is, in effect the collective or distilled experience of narcotics officers concerning characteristics repeatedly seen in drug smugglers."
>
> *United States v. Quigley*, 890 F.2d 1019, 1021 (8th Cir.1989) (citations omitted), *cert. denied*, 493 U.S. 1091, 110 S.Ct.

6

1163, 107 L.Ed.2d 1066 (1990). Translated into the battering spouse context, a profile is a compilation of characteristics repeatedly seen in those who batter their spouses.

While our research has not disclosed any case dealing specifically with battering spouses, other jurisdictions in different contexts have dealt with similar attempts to construct a criminal profile for the purpose of proving conduct in conformity therewith. Those jurisdictions that have considered profiles of battering parents, pedophiles, rapists, and drug couriers unanimously agree that the prosecution may not offer such evidence in its case-in-chief as substantive evidence of guilt. These cases generally articulate three evidentiary bases for excluding evidence tending to establish that the defendant fits a particular profile: 1) relevancy; 2) probative value substantially outweighed by prejudicial effect; and 3) impermissible character evidence.

*Ryan*, 988 P.2d at 55. Evidence attempting to establish a profile of the victim is subject to the same limitations as evidence attempting to establish a profile of the accused under Rule 405. *See* Mueller and Kirkpatrick, 3 *Federal Evidence*, § 351 (2d ed. 1994). We find no meaningful distinction between the expert testimony at issue in *Ryan* and the expert testimony excluded in the present case. The district court did not err in excluding the evidence.

**Issue 3: Exclusion of jury instructions relating to the use of force in defense of habitation**

[¶21] In his third issue, Appellant claims the district court erred by declining to give his proposed instructions relating to self-defense in a home or habitation. Appellant proposed the following instructions:

Proposed Jury Instruction No. 16:

A person may defend his home or habitation against anyone who manifestly intends or endeavors in a violent or riotous manner, to enter that home or habitation and who appears to intend violence to any person in that home or habitation. The amount of force that the person may use in resisting such trespass is limited by what would appear to a reasonable person, in the same or similar circumstances, necessary to resist the violent or unlawful entry. A person is not bound to retreat even though a retreat might safely be made. A person

7

may resist force with force, increasing it in proportion to the intruder's persistence and violence if the circumstances apparent to him are such as would excite similar fears and a similar belief in a reasonable person. If the person kills under the influence of such fear, the homicide is not a felonious homicide but is justified.

Proposed Jury Instruction No. 17:

A person who unlawfully and by force enters or attempts to enter another's home or habitation is presumed to be doing so with the intent to commit an unlawful act involving force or violence.[1]

The district court declined to give the requested instructions after determining that the definition of "habitation" does not apply to vehicles and that the instruction did not fit the evidence.

[¶22] We review the refusal to give a proposed jury instruction for an abuse of discretion. *Gonzalez-Ochoa v. State*, 2014 WY 14, ¶ 18, 317 P.3d 599, 604 (Wyo. 2014).

When reviewing questions involving jury instructions, we afford significant deference to the trial court's decisions. *Farmer v. State*, 2005 WY 162, ¶ 20, 124

---

[1] Appellant claims that his Proposed Jury Instruction No. 17 provided as follows:

"Habitation" means any structure that is designed or adapted for overnight accommodation, including, but not limited to, buildings, modular units, trailers, campers, tents and vehicles.

However, no such proposed instruction is contained in the record. Appellant also contends the district court erred because it did not give his Proposed Jury Instruction No. 18. That instruction provided that

It is lawful for a person who is being assaulted to defend himself from attack if he has reasonable grounds for believing and does believe that bodily injury is about to be inflicted upon him. In doing so he may use all force that would appear to a reasonable person, in the same or similar circumstances, to be necessary to prevent the injury that appears to be imminent.

Appellant's Proposed Jury Instruction No. 18, however, was given by the district court as Jury Instruction No. 26. Accordingly, we do not address Appellant's claim that the district court erred by declining to give this instruction.

P.3d 699, 706 (Wyo. 2005). "A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the instructions in their entirety sufficiently cover[] the relevant issue, reversible error will not be found." *Roden v. State*, 2007 WY 200, ¶ 21, 173 P.3d 369, 375 (Wyo. 2007), quoting *Duke v. State*, 2004 WY 120, ¶ 90, 99 P.3d 928, 954 (Wyo. 2004).

*Gonzalez-Ochoa*, ¶ 18, 317 P.3d at 605 (quoting *Benjamin v. State*, 2011 WY 147, ¶ 37, 264 P.3d 1, 11 (Wyo. 2011)).

[¶23]  In Wyoming, a person has a greater right to use self-defense within one's "home or habitation." Wyo. Stat. Ann. § 6-2-602.  A "habitation" is defined as "any structure which is designed or adapted for overnight accommodation, including, but not limited to, buildings, modular units, trailers, campers and tents[.]"  Wyo. Stat. Ann. § 6-2-602(d)(i). Appellant contends that his vehicle fell within the statutory definition of habitation because he adapted it for overnight accommodation when he chose to sleep in it. However, he provides no authority interpreting the statutory definition of "habitation" to include vehicles, and no authority supporting his claim that a vehicle may be "adapted" for overnight accommodation simply by choosing to sleep in it.  Accordingly, we are unable to find that the district court abused its discretion when it declined Appellant's request to instruct the jury on self-defense in a home or habitation.

[¶24]  Appellant also claims that Wyo. Stat. Ann. § 6-2-602(d)(i) was changed by the legislature in 2014 to remove "vehicles" from the definition of "habitation."  As a result, he contends that the failure to give the requested instructions violates constitutional prohibitions against the enactment of *ex post facto* laws.  We do not agree.  Appellant incorrectly claims that Wyo. Stat. Ann. § 6-2-602(d)(i) was amended in 2014.  The legislature added the definition of "habitation" to the statute in 2011.  2011 Wyo. Sess. Laws ch. 142, § 1.  That definition, which has never included "vehicles," has remained the same since it was included in the statute.  Accordingly, we find no merit in this argument.

**Issue 4:  Jury instruction relating to first aggressor**

[¶25]  In his fourth issue, Appellant claims the district court abused its discretion by giving Jury Instruction No. 27, relating to self-defense.  That instruction provided as follows:

Jury Instruction No. 27

In considering the claim of self-defense in this case,

9

you must first determine whether the Defendant was the aggressor in this case or whether Mr. Baldwin was the aggressor in this case. Some sort of physical aggression or a threat of imminent use of deadly force is required before a person will be considered an aggressor. Verbal provocation without more is generally insufficient to justify an initial aggressor. If you find that the Defendant was the aggressor in this case, you should consider his duty under Instruction 28. If you find that Mr. Baldwin was the aggressor you should review the Defendant's actions under Instruction 29.

If the jury determined that Appellant was the first aggressor, Jury Instruction No. 28 instructed that he must first withdraw or retreat before resorting to deadly force. If the jury determined, however, that the victim was the first aggressor, Jury Instruction No. 29 instructed that Appellant must use other reasonable, legal alternatives before resorting to deadly force. [2]

[¶26] Appellant contends that Instruction No. 27 is contrary to *Drennen v. State*, 2013 WY 118, 311 P.3d 116 (Wyo. 2013). He claims that pursuant to *Drennen* "the jury's duty is not to 'first determine' who was the aggressor but, instead, to determine whether the defendant reasonably perceived a threat of immediate bodily injury under the circumstances and whether he defended himself in a reasonable manner, by evaluating

---

[2] Jury Instruction No. 28 provided as follows:

> Even if the defendant had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, the defendant was justified in using deadly force to repel the danger only if he retreated as far as he safely could do before using deadly force. The law requires a person to retreat rather than to take the life of an adversary if there was a convenient mode of retreat without increasing his actual or apparent peril. To excuse a failure to retreat, it is necessary that the defendant's peril would be increased, or that it reasonably appeared that it would be increased, by retreat. If you find that the defendant could have safely retreated but failed to do so, the defendant cannot rely on the justification of self-defense.

Jury Instruction No. 29, in turn, provided:

> Prior to resorting to deadly force a Defendant has a duty to pursue reasonable alternatives under the circumstances. The Defendant may use deadly force only if necessary, and must consider reasonable alternatives, which may include retreat, before resorting to deadly force.

the totality of the circumstances and his options in protecting himself from such a perceived threat of harm."

[¶27] In *Drennen*, ¶ 32, 311 P.3d at 127, we stated that "In cases where the determination of which party was the aggressor is in dispute, the jury should be specifically instructed as to the definition of 'aggressor' so it can resolve the factual issue." We then proceeded to set forth the manner in which the jury should be instructed:

> When the defendant has met the minimal burden of presenting a prima facie case that the deceased was the aggressor, the district court must instruct the jury on the legal definition of "aggressor." ***The jury should be instructed that if it determines the defendant was the aggressor, he had a duty to withdraw or retreat before he could claim the right to self-defense.*** If, on the other hand, the defendant has not made a prima facie case that the deceased was the aggressor, the jury should be instructed on the defendant's absolute duty to withdraw or retreat before self-defense will be recognized. In cases where the evidence establishes, as a matter of law, the defendant was not the aggressor, the jury should not be charged that he had an absolute duty to retreat. ***In all cases, the jury should be instructed that the defendant was justified in using deadly force only if necessary; consequently, he must consider reasonable alternatives, which may include retreat, before using deadly force.***

*Id.*, ¶ 39, 311 P.3d at 129 (emphasis added). We agree with Appellant that the jury must evaluate the totality of the circumstances to determine whether a defendant reasonably perceived a threat of immediate bodily injury and whether he defended himself in a reasonable manner. *Drennen*, ¶ 13, 311 P.3d at 122. Considering which party was the first aggressor, however, is not inconsistent with an evaluation of the totality of the circumstances. Rather, because the parties disputed whether the victim was the first aggressor, the jury was required to consider which party was the first aggressor in its evaluation of the totality of the circumstances. Jury Instruction No. 27 is consistent with the standards set forth in *Drennen*. We find no abuse of discretion in the district court's decision to give the instruction.

**Issue 5:  Admission of 404(b) evidence**

[¶28]  In his final issue, Appellant contends the district court abused its discretion when it admitted testimony regarding statements Appellant made to Christopher Syverson and Crystal Mize on the night of October 3rd.  Appellant claims the evidence was inadmissible because the testimony was noticed by the State after the court's deadline for

disclosing 404(b) evidence relating to other crimes, wrongs, or acts. According to Appellant "Allowing their testimony, without first following the required [] procedures after an allegation of a discovery order violation, was an abuse of discretion that prejudiced Mr. Knospler's defense and was reversible error." We do not agree. Appellant's argument fails to account for the fact that he did not allege a discovery violation until after the witnesses testified at trial.

[¶29] The State filed its original notice of intent to introduce evidence under Rule 404(b) on June 23. On November 19, 2014, approximately a month prior to trial, the State filed a notice of intent to offer testimony of Westy Guill, Christopher Syverson, and Crystal Mize. The State indicated that the witnesses would each give testimony relating to conversations they had with Appellant on the night of October 3rd: Mr. Guill, an employee of Racks bar, would testify that Appellant had asked him to arrange a purchase of cocaine; Mr. Syverson, a friend of the victim, would testify that Appellant had indicated he wanted to smoke marijuana; Ms. Mize, also an employee of Racks bar, would testify that Appellant talked to her about how easy it would be to kill someone and told her that "nobody means nothing to me." The State noted that it had not previously disclosed the proposed testimony because the statements were discovered during additional interviews of the witnesses conducted on November 17th and 18th.

[¶30] Appellant responded to the State's notice by filing a motion *in limine* to exclude the proposed testimony. In that motion, Appellant claimed the evidence was inadmissible because it was irrelevant under W.R.E. 401 and because the probative value of the evidence was outweighed by the danger of unfair prejudice under W.R.E. 403. Appellant also asserted that the evidence constituted inadmissible hearsay under W.R.E. 802. Notably, Appellant did not object on the basis that the State's delayed notice constituted a violation of the court's discovery deadline. The district court determined that the evidence was relevant and denied Appellant's motion.[3]

[¶31] After the witnesses testified at trial, defense counsel stated that he was "going to be asking" the Court to strike the testimony of Ms. Mize and Mr. Syverson "as a result of two direct discovery violations." Counsel subsequently filed a motion to strike the testimony of Ms. Mize and Mr. Syverson on the grounds that the State had violated the court's June 23, 2014, deadline to disclose 404(b) evidence as well as the court's December 8, 2014, deadline to disclose witness statements. The district court denied the motion.

[¶32] In *Seivewright v. State*, 7 P.3d 24, 28 (Wyo. 2000), we held that, pursuant to

---

[3] Appellant does not challenge the district court's determination regarding the relevancy of the evidence.

W.R.Cr.P. 26.2,[4] the district court is obligated to pursue the matter when there has been an allegation of a discovery violation. *See also Willoughby v. State*, 2011 WY 92, ¶ 26, 253 P.3d 157, 165 (Wyo. 2011). We have also held, however, that a defendant must timely allege a discovery violation in order for the mandates of W.R.Cr.P. 26.2 to apply. In *Warner v. State*, 2001 WY 67, ¶ 24, 28 P.3d 21, 29 (Wyo. 2001), the prosecution did not notify the court that it would present an expert witness until after the defense rested. During the expert's testimony, the defense objected on grounds that the testimony was improper rebuttal. *Id.* The district court overruled the objection. After the expert completed her testimony, the defense submitted a motion for mistrial which alleged discovery violations. The court denied the defendant's motion. *Id.* On appeal, we held that the rule of *Seivewright* did not apply:

> The record shows that despite a pretrial order requiring the prosecution to provide discovery under W.R.Cr.P. 16 and 26.2, the expert testified without notice to the defense. In *Seivewright v. State*, 7 P.3d 24 (Wyo. 2000), we held that when a defendant alleges that the State has failed to comply with W.R.Cr.P. 26.2, the district court is required to hold a hearing and determine if any discovery violation has occurred, and the failure for the district court to hold a hearing is reversible error. *Id.* at 28. In this case, Warner waited until after the expert had testified before moving for a mistrial on grounds that he had not received pretrial notice that the expert would testify and had not been given her curriculum vitae, but he did not specify a W.R.Cr.P. 26.2 violation. Under these circumstances, *Sievewright* would not apply; instead, we apply an abuse of discretion standard to the trial court's failure to grant a motion for mistrial for violation of the pretrial order. *See Lawson v. State*, 994 P.2d 943, 946-47 (Wyo. 2000). "[A] mistrial is an extreme and drastic

---

[4] W.R.Cr.P. 26.2 provides, in relevant part, as follows:

> (e) *Failure to comply with order.* -- If a party elects not to comply with an order to deliver a statement, the court shall order:
>
> > (1) That the witness not be permitted to testify; or
> >
> > (2) That the testimony of the witness be stricken from the record and that the trial proceed; or
> >
> > (3) If it is the attorney for the state who elects not to comply, shall declare a mistrial if required in the interest of justice.

remedy which should be resorted to only when there has been an error so prejudicial that justice could not be served by continuing the trial." *Ramirez v. State*, 739 P.2d 1214, 1220 (Wyo. 1987). The discovery violation did not warrant granting a mistrial.

*Warner*, ¶ 25, 28 P.3d at 29.

[¶33] Appellant notes that, pursuant to this Court's precedent, the district court must determine an appropriate sanction following an allegation of a discovery violation. Relying on this rule, Appellant claims that "The Court did not conduct any such inquiry before it allowed the State's new 404(b) evidence, which was an abuse of discretion because the absence of such inquiry foreclosed reasonable exercise of discretion." However, Appellant did not allege a discovery violation until after all three witnesses had testified at trial. As noted above, the State provided notice of its intent to introduce testimony from the three witnesses approximately a month prior to trial. Although Appellant filed a motion *in limine* to exclude the testimony, he did not raise an issue with respect to any discovery violation. Appellant also did not allege a discovery violation at the pretrial conference held a week prior to trial. Indeed, Appellant did not raise the issue at trial until after the witnesses had testified. When the issue was raised, counsel requested the opportunity to brief the issue and stated "I'm going to be asking the Court to strike both witnesses . . . as a result of two direct discovery violations." Appellant filed a motion to strike several days later, after the defense rested.

[¶34] Considering these circumstances, we find no merit in Appellant's claim that the district court's decision to admit the evidence was an abuse of discretion. No discovery violation was alleged by Appellant at any point prior to the witnesses' testimony. The district court did not abuse its discretion in admitting the testimony.

[¶35] Affirmed.